UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APPOLYON, INC.,<br><br>　　　　　Plaintiff<br><br>v.<br><br>DONALD MCLEAN,<br><br>　　　　　Defendant. | Civil Action No.:<br><br>**COMPLAINT**<br>**JURY DEMAND** |

Plaintiff APPOLYON, INC. ("Appolyon" or "Plaintiff") by and through its undersigned counsel, brings this action for damages against its former co-owner, defendant DONALD MCLEAN ("McLean" or "Defendant"), alleging as follows:

## NATURE OF ACTION

1.　This is an action by Appolyon for damages it has sustained due to the racketeering activity of its former co-owner, McLean.

2.　The racketeering was carried out through McLean's limited liability company, TWWM LLC.

3.　McLean has also carried out other racketeering schemes through this entity damaging other victims. Each of these schemes entailed the use of interstate wires to commit fraud or theft.

4.　In addition, Appolyon also asserts state law claims to redress the same injury.

## PARTIES, JURISDICTION & VENUE

5.　Plaintiff, Appolyon, is a Pennsylvania corporation with its primary place of business in Pennsylvania.

6.　Defendant Donald McLean is a citizen of Pennsylvania.

7. This Court has subject matter jurisdiction of the case as a federal question arising from the Racketeer Influenced and Corrupt Organizations Act (RICO) pursuant to 28 U.S.C. §1331 and RICO's civil damages provision, 18 U.S.C. §1964(c).

8. The Court has personal jurisdiction over McLean because he resides in this district.

9. Venue is proper in this district because McLean resides here and a substantial part of the events at issue occurred here.

### McLEAN'S SCHEME TO STEAL APPOLYON'S $3.6 MILLION

10. In October 2021 McLean, as the principal of TWWM and also a co-principal of Appolyon, contacted Palmetto State Armory (PSA) by telephone in South Carolina. After hearing McLean represent that TWWM could acquire the munitions from Bulgaria it wanted for $3.6 million, PSA wired that sum from South Carolina to Appolyon in Pennsylvania. Appolyon was supposed to use that money to fulfill PSA's order.

11. However, McLean never intended to fulfill the promise and buy the munitions. Instead, he stole PSA's $3.6 million from Appolyon.

12. McLean then wired that money to Romania, after wiring $505,000 to TWWM to settle ongoing litigation.

13. This transportation of stolen money constitutes a violation of 18 U.S.C. §2314 which makes it a federal crime to "transport[], transmit[] or transfer[] in interstate or foreign commerce any…money…knowing the same to have been stolen, converted or taken by fraud;"

14. Thus, Appolyon has been damaged by the theft of its $3.6 million.

## McLEAN'S PATTERN OF FRAUDS AGAINST OTHER VICTIMS

15. McLean has used TWWM to defraud numerous customers. These customers include Paradigm SRP LLC, a Texas company that McLean contacted in 2016 in an effort to solicit it as a customer for the purpose of buying munitions.

16. In September 2016, McLean, from Pennsylvania, spoke to one of the principals of Paradigm SRP LLC, in Texas, over the telephone. Paradigm SRP LLC placed an order for munitions with TWWM.

17. McLean promised in that conversation to acquire the munitions it wanted for $140,000. He asked that Paradigm SRP LLC wire that sum to TWWM. It did so shortly thereafter, by interstate wire, to TWWM in Pennsylvania.

18. But McLean never intended to fulfill the promise and buy the munitions. Instead TWWM stole Paradigm SRP LLC's money and never provided it with anything.

19. McLean thus violated the federal wire fraud statute, 18 U.S.C. §1343 which prohibits "scheme[s]…to defraud… by means of false or fraudulent…representations, or promises…" which use interstate wires.

20. In October 2020 McLean, as the principal of TWWM, contacted Texas Gun Experience in Texas by telephone from Pennsylvania. After hearing McLean represent that TWWM could acquire the munitions it wanted for $500,000, Texas Gun Experience wired that sum from Texas to TWWM in Pennsylvania.

21. However, McLean never intended to fulfill the promise and buy the munitions. Instead TWWM stole Texas Gun Experience's $500,000 and never provided it with anything. This was another wire fraud violation.

22. In October 2020 McLean, as the principal of TWWM, contacted IAD2 by telephone. After hearing McLean represent that TWWM could acquire the munitions it wanted for $970,000, IAD2 wired that sum to TWWM in Pennsylvania. McLean then wired the money from Pennsylvania to the Czech Republic.

23. However, McLean never intended to fulfill the promise and buy the munitions. Instead TWWM stole IAD2's $970,000 and never provided it with anything. This was another wire fraud violation.

24. In November 2021 McLean, as the principal of TWWM, contacted IAD3 by telephone. After hearing McLean represent that TWWM could acquire the munitions it wanted for $960,000, IAD3 wired that sum to TWWM. McLean then wired the money to Romania.

25. However, McLean never intended to fulfill the promise and buy the munitions. Instead TWWM stole IAD3's $960,000 and never provided it with anything. This was another wire fraud violation.

## COUNT I

### McLEAN HAS VIOLATED RICO

26. As detailed above, McLean has committed several schemes to steal from Appolyon and defraud other victims between 2016 and 2021.

27. These schemes violate 18 U.S.C. §2314 and 18 U.S.C. §1343. They are made forms of "racketeering activity" by 18 U.S.C. §1961(1)(B).

28. McLean is a "person" because he is "capable of holding a legal or beneficial interest in property." 18 U.S.C. §1961(3).

29. TWWM is a limited liability company and therefore a RICO enterprise. 18 U.S.C. §1961(4). It affected interstate commerce by contracting with businesses in many states.

30. McLean has committed a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

31. His acts of theft and wire fraud are related in that they were committed for the same purpose, to cheat Appolyon and others who dealt with the TWWM enterprise.

32. Appolyon has been proximately damaged by one of these RICO violations.

33. Therefore, Appolyon asserts a claim against McLean for violating 18 U.S.C. 1962(c), which makes it a RICO violation for "any person employed by or associated with any enterprise… to conduct or participate… in the conduct of such enterprise's affairs through a pattern of racketeering activity…"

## PRAYER FOR RELIEF

Wherefore, Plaintiff Appolyon requests entry of a judgment against McLean for three times damages of $3.6 million, which is $10.8 million, plus pre-judgment interest, costs, reasonable attorney's fees; and any other relief deemed just and proper, as provided by 18 U.S.C. §1964(c).

## STATE CAUSES OF ACTION

### *APPOLYON, INC. v. DONALD MCLEAN*

### COUNT II

### CONVERSION

34. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

35. Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification. *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (1964).

36. Conversion can result only from an act intended to affect chattel. *Prosser & Keeton, Torts*, § 15 (5th ed. 1984).

37. Specific intent is not required, but rather an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights which establishes the tort. Id.

38. Money and other intangible property may be the subject of conversion. *Pearl Assurance Co. v. National Ins. Agency*, 30 A.2d 333, 337 (Pa. Super. 1943).

39. Appolyon received $3.6 million from PSA pursuant to a contract.

40. McLean, with intent and without lawful justification, deprived Appolyon of the $3,600,000.00 and used it for his benefit as described at length herein.

41. McLean never returned any of the sum and is currently not in possession of, and is therefore without the use of, the full $3.6 million.

Wherefore, Plaintiff Appolyon requests entry of a judgment against McLean for damages of $3.6 million, pre-judgment interest, costs, reasonable attorney's fees; and any other relief this Honorable Court deems just and proper.

## COUNT III

### BREACH OF FIDUCIARY DUTY

42. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

43. McLean was a shareholder and director of Appolyon from its initial formation, making him a fiduciary. See, 15 Pa.C.S.A §§ 512, 1712; *Wolf v. Fried,* 373 A.2d 734 at 735 (Pa. 1977); *In re Rite Way Elec., Inc.,* 510 B.R. 471 at 487 (Bankr. E.D. Pa. 2014) (interpreting Pennsylvania law).

44. When committing the acts described herein, McLean was acting as a president and treasurer.

45. No matter which fiduciary title applies, McLean's actions were self-serving and not reasonable for a shareholder, president, treasurer, or director.

46. Appolyon has been proximately damaged by McLeans actions of placing another company, TWWM, above the corporation.

47. Therefore, Appolyon asserts that McLean breached his fiduciary duty owed to the corporation and its shareholders. See, *Seabord Indus., Inc. v. Joachim,* 45 Pa. D. & C.2d 780 (C.P. Phila. 1968); see also, *Weissmann v. A. Weissman, Inc.,* 97 A.2d 870 (1953).

Wherefore, Plaintiff Appolyon requests entry of a judgment against McLean for damages of $3.6 million, plus punitive damages this Honorable Court deems appropriate, pre-judgment interest, costs, reasonable attorney's fees; and any other relief deemed just and proper.

## COUNT IV

### EMBEZZLMENT

48. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

49. Appolyon entered into a contract with Palmetto State Armory, through McLean's efforts, that brought in a deposit amount of $3,600,000 intended for Bulgaria.

50. The day after receiving this deposit, McLean transferred $505,000 to his RICO entity, TWWM.

51. Additionally, McLean sent large sums of money intended for Bulgaria to Romania to fulfill a TWWM contract.

52. McLean was entrusted to make a $3,600,000 deposit for munitions in Bulgaria.

53. McLean never made deposits to Bulgaria, and instead diverted funds to TWWM to enrich himself.

54. Therefore, Appolyon asserts that McLean through TWWM embezzled funds of Appolyon.

Wherefore, Plaintiff Appolyon requests entry of a judgment against McLean for damages of $3.6 million, pre-judgment interest, costs, reasonable attorney's fees; and any other relief this Honorable Court deems just and proper.

## COUNT V

### PROMISSORY ESTOPPEL

55. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

56. A promissory estoppel claim must establish that (1) the promisor must make a promise that she should reasonably expect to induce a definite action or forbearance on the part of the promissee; (2) the promise must actually induce such an action or forbearance; and (3) injustice can only be avoided by enforcement of the promise. See, *Crouse v. Cyclops Indus*, 745 A.2d 606 (Pa. 2000); *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003 (Pa Super. 1997); *Guerra v. Redevelopment Auth. Of Phila.*, 27 A.3d 1284 (Pa. 2011).

57. McLean made statements and promises regarding Appolyon's funding that he knew the corporation's shareholders would rely on.

58. Appolyon and its shareholders did, in fact, engage in business activities based on these statements.

59. McLean is the only party to benefit from these actions, in that he took corporate funds through TWWM.

60. Allowing McLean to retain these benefits and not pay the company its portion of the profits is unjust.

61. Therefore, Appolyon asserts that it is entitled to equitable relief in the form of disgorgement of profits collected by McLean through TWWM.

Wherefore, Plaintiff Appolyon requests entry of a judgment against McLean in the form of disgorgement of profits, for damages of $3.6 million, pre-judgment interest, costs, reasonable attorney's fees; and any other relief this Honorable Court deems just and proper.

## COUNT V

### IMPOSITION OF A CONSTRUCTIVE TRUST

62. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

63. "The imposition of a constructive trust is an equitable remedy designed to prevent unjust enrichment," and arises, ".[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. . . ." *Yohe v. Yohe*, 466 Pa. 405, 411 (Pa. 1976), citing, *Restatement of Restitution* § 160 (1937); *Truver v. Kennedy*, 425 Pa. 294, 305, 229 A.2d 468, 474 (1967); *Chambers v.*

*Chambers*, 406 Pa. 50, 54, 176 A.2d 673, 675 (1962); *Gray v. Leibert*, 357 Pa. 130, 135, 53 A.2d 132, 135 (1947); A. W. Scott, Trusts § 462.1 at 3415 (3d ed. 1967).

64. McLean was conveyed Appolyon's $3.6 million and had a duty to convey that property in accordance with the Appolyon/PSA contract.

65. McLean instead retained that money to, among other things, enrich himself and other companies he is involved with.

66. It would be unjust if McLean was able to retain Appolyon $3.6 million.

Wherefore, Plaintiff Appolyon requests entry of a judgment against McLean for damages of $3.6 million, pre-judgment interest, costs, reasonable attorney's fees; and any other relief this Honorable Court deems just and proper.

## COUNT VII

### MONEY HAD AND RECEIVED

67. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

68. "A cause of action for money had and received entitles a party to relief where money is wrongfully diverted from its proper use and that money subsequently falls into the hands of a third person who has not given valuable consideration for it." *Solomon v. Gibson*, 615 A.2d 367, 369 (Pa. Super. Ct. 1992) (citation omitted).

69. However, the claim depends on the notion that "one has in his hands money which in equity and good conscience belongs and ought to be paid to another . . . ." *Takeda Pharm. U.S., Inc. v. Spireas*, 400 F. Supp. 3d 185, 213-14 (E.D. Pa. 2019) (quoting *Hughey v. Robert Beech Assocs.*, 378 A.2d 425, 427 (Pa. Super. Ct. 1977)).

70. McLean wrongfully diverted $3.6 million from the Appolyon/PSA contract, and the money "fell in the hands" of McLean's other company and third party, TWWM.

71. TWWM nor McLean gave any consideration for the $3.6 million.

72. Appolyon is entitled to its $3.6 million under a money had and received theory.

Wherefore, Plaintiff Appolyon requests entry of a judgment against McLean for damages of $3.6 million, pre-judgment interest, costs, reasonable attorney's fees; and any other relief this Honorable Court deems just and proper.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Appolyon requests entry of a judgment against McLean for:

1. For compensatory damages to be determined at trial;

2. For general damages, consequential damages, and special damages, according to proof;

3. For punitive damages according to proof in an amount to be determined at trial and sufficient to punish Defendant and deter them and others from similar wrongful conduct;

4. For all other equitable relief, including disgorgement by Defendants of all sums obtained pursuant to the unlawful conduct described herein;

5. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff APPOLYON, INC. demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

**The Skeen Firm, PLLC**

Dated: January 17, 2024

By: /s/ Brian P. McLaughlin
Brian P. McLaughlin
PA I.D. No. 331695
brian@theskeenfirm.com
Brocton G. Skeen
PA I.D. No. 325164
(*Pro Hac Vice Pending*)
bskeen@theskeenfirm.com
6 S. Main Street, Suite 210
Washington, PA 15301

**Foster, PC**

Howard W. Foster
IL ID. No.6201218
(*Pro Hac Vice Pending*)
hfoster@fosterpc.com
150 N. Wacker Dr., Suite 4250
Chicago, IL 60606