**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| YULEK STEVEN DEC, *derivatively on behalf of* APPOLYON, INC., <br><br> Plaintiff, <br><br> v. <br><br> DONALD MCLEAN, <br><br> Defendant. | Civil Action No.: 1:24-cv-00083-CCC <br><br> **BRIEF IN OPPOSITION TO MOTION TO DISMISS** <br><br> **JURY DEMAND** |

**Table of Contents**

I.    INTRODUCTION ..............................................................................................1

II.   STANDARD OF REVIEW ...............................................................................2

III.  ARGUMENT .....................................................................................................2

A.   SUBJECT MATTER JURISDICTION EXISTS AND THIS COURT SHOULD NOT ABSTAIN FROM HEARING PLAINTIFF'S CLAIMS. ....................................................2

    i.   *The two cases are not parallel and therefore abstention is improper.* .........4

    ii.  *If the two cases are considered parallel, the Nationwide factors* ...............7

    *favor Plaintiff and abstention is still improper.* ..................................................7

    iii. *Conclusion – Abstention* ..............................................................................10

B.   PLAINTIFF HAS STANDING TO BRING THE DERIVATIVE ACTION AND HAS PLED A COGNIZABLE RICO CLAIM. ....................................................................10

      i.    *Dec has complied with 15 Pa.C.S. § 1781 et seq.* ....................................10

      ii.   *Irreparable Harm: Reputational Damage*..................................................12

      iii.  *Irreparable Harm: Bankruptcy* .................................................................13

  C.   DEC HAS SUCCESSFULLY PLEADED A COLORABLE RICO CLAIM. ....................15

      i.    *The RICO Claim States a Cause of Action Including a Pattern of*

      *Racketeering* ........................................................................................................15

      ii.   *The Motion's Other Criticisms of the RICO Claim Are Wrong* ...............17

  D.   TWWM IS NOT AN INDISPENSABLE PARTY. ...................................................19

      i.    *TWWM is not an indispensable party under rule 19(a).* ..........................19

      ii.   *TWWM is not an indispensable party under rule 19(b).* ..........................19

PRAYER FOR RELIEF ..........................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Apex Construction Co., Inc. v. United States Virgin Islands,* 2023 WL 5287668 at

*2 (3d Cir. 2023)(same) ------------------------------------------------------5

*Ashcroft v. Iqbal*, 556 U.S. 662 at 678 (2009)---------------------------------------4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, at 556 (2007) -----------------------------4

*Corp. v. Mei-Xin Ltd.*, No. 22-1710, at 15 (3d Cir. August 5, 2022)---------------- 15

*Golden Fortune Import & Exp. Corp. v. Mei-Xin Ltd.*, No. 22-1710, at 15 (3d Cir.

August 5, 2022) ------------------------------------------------------------- 16

*H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240 (1989)------------------ 18

*Hayes v. Gross*, 982 F.2d 104, 105-06 (3d Cir. 1992) ---------------------------------4

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989)

-------------------------------------------------------------------------------15, 16

*Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017)---------------6

*Menzies v. Seyfarth Shaw L.L.P.,* 197 F. Supp. 3d 1076, 1098 (N.D. Ill. 2016)--- 17

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,* 571 F.3d 299, 307 (3d

Cir. 2009) ---------------------------------------------------------------------7

*Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3d Cir.

1990) ------------------------------------------------------------------------ 15

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998)*

-------------------------------------------------------------------------------- 15

*Quackenbush v. Allstate Ins.,* 517 U.S. 706, 721 (1996)-------------------------------5

*Rose v. Bartle,* 871 F.2d 331, 362 n.53 (3d Cir. 1989) ------------------------------- 20

*Rotella v. Wood,* 528 U.S. 549, 557 (2000)------------------------------------------- 17

*Russo v. Lamancusa,* 2024 WL 1433637 at *3 (3d Cir. 2024)----------------------- 17

*Ryan v. Johnson,* 115 F.3d 193, 196 (3d Cir. 1997) ------------------------------------6

*S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir.1992)----------15, 17

*Schofield v. First Commodity Corp. of Boston,* 793 F. 2d 28, 30 (1ˢᵗ Cir. 1986) -- 22

*Shaev v. Saper,* 320 F.3d 373, 375 (3d Cir. 2003) ---------------------------------------4

*Swistock v. Jones,* 884 F.2d 755, 759 (3d Cir. 1989) ------------------------------- 19

*Tabas v. Tabas,* 47 F.3d 1280, 1294 (3d Cir. 1995) ------------------------------- 19

*Univ. of Maryland at Baltimore v. Peat Marwick Main Co.,* 923 F.2d 265, 275-76

  (3d Cir. 1991) ------------------------------------------------------------------5

*Vertiv, Inc. v. Wayne Burt PTE, Ltd* No. 22-3305, at p.13 (3d Cir. February 1,

  2024) ------------------------------------------------------------------------------6

S<small>TATUTES</small>

*15 Pa.C.S. § 1781 et seq.*-------------------------------------------------------------12, 14

15 Pa.C.S. § 1781(a),(b)(2) ------------------------------------------------------- 13

*15 Pa.C.S. § 1781(a)(2)* ------------------------------------------------------------- 13

*15 Pa.C.S. § 1781(b)(1).* ------------------------------------------------------------------- 17

15 Pa.C.S. § 1781(b)(2) ------------------------------------------------------------------- 14

18 U.S.C. §1964(c) ----------------------------------------------------------------------5

18 U.S.C. §2314 ------------------------------------------------------------------------ 20

28 U.S.C. §1331 ------------------------------------------------------------------------5

<u>R<span>ULES</span></u>

Fed. R. Civ. P. 8(a)-------------------------------------------------------------------- 20

Fed. R. Civ. P. 9(b)-------------------------------------------------------------------- 20

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

Plaintiff, YULEK STEVEN DEC ("Dec"), derivatively on behalf of APPOLYON, INC. ("Appolyon") by and through its undersigned counsel, files the within Brief in Opposition to Defendant, DONALD MCLEAN ("McLean" or "Defendant")'s Motion to Dismiss and Brief in Support (*See*, *ECF 12, 16*) alleging as follows:

## I.      INTRODUCTION

Dec and McLean co-own Appolyon, Inc. After Appolyon and Palmetto State Armory had a deal for Bulgarian munitions, of a specific nature, for $3.6M, McLean stole that $3.6M from Appolyon and used it to satisfy other contracts or litigation for TWWM, Donald McLean's company. McLean never returned the $3.6M to Appolyon despite multiple requests, and it is unknown where that money is.  It was later discovered that McLean consistently engages in theft and fraud, and this has victimized numerous Appolyon customers, giving rise to a RICO claim and other state-law claims.

Appolyon has suffered irreparable harm in that it is insolvent as a result of McLean's actions.  Mr. Dec filed the current derivative action in federal court on behalf of Appolyon to recover the lost/stolen $3.6M from Mr. McLean.  Dec's

counsel promptly sent a post-complaint demand for the money to Appolyon.  It was denied.

The Motion to Dismiss ("the Motion") seeks to dismiss all claims alleging: (1) that this Court lacks subject matter jurisdiction; (2) the First Amended Complaint (FAC) fails to state a RICO claim,  and (3) it fails to join an indispensable party.  As will be demonstrated, all three arguments are wrong.

## II.    STANDARD OF REVIEW

"For the purposes of [Defendant's] motion to dismiss, we must accept as true [the] allegations in [Plaintiff's] complaint and make all reasonable inferences in [Plaintiff's] favor." *Shaev v. Saper,* 320 F.3d 373, 375 (3d Cir. 2003), citing, *Hayes v. Gross*, 982 F.2d 104, 105-06 (3d Cir. 1992). Factual pleadings must be plausible, not speculative, and must only "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 at 678 (2009), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, at 556 (2007).

## III.   ARGUMENT

## A. Subject Matter Jurisdiction Exists and this Court Should Not Abstain From Hearing Plaintiff's Claims.

Count I of the FAC asserts a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO).   Accordingly, there is federal question

jurisdiction pursuant to 18 U.S.C. §1964(c), RICO's civil suit provision and 28 U.S.C. §1331.   *ECF 10, ¶ 14.*

The Motion argues that "[t]he Court ***lacks*** subject-matter jurisdiction over this case under *Colorado River* abstention doctrine." *ECF 16 pp. 6, 11.* (e*mphasis added).* That is incorrect.  Abstention doctrines in actions seeking damages merely postpone, not dismiss, cases.  *See, e.g., Quackenbush v. Allstate Ins.,* 517 U.S. 706, 721 (1996)("By contrast, while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions"); *accord, Apex Construction Co., Inc. v. United States Virgin Islands,* 2023 WL 5287668 at *2 (3d Cir. 2023)(same).  Thus, abstention in such cases has nothing to do with jurisdiction. Moreover, the rule in the Third Circuit is that "simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action."  *Univ. of Maryland at Baltimore v. Peat Marwick Main Co.,* 923 F.2d 265, 275-76 (3d Cir. 1991).

Rather, *Colorado River* holds federal courts "may decline to exercise or postpone the exercise of its jurisdiction," via abstention, but  "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule[,]" and "[o]nly the clearest of justifications will warrant dismissal." *Colorado River* at 813, 818.

Abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813.

Defendant demands this court abstain from hearing this case due to a pending Pennsylvania state court case, *TWWM, LLC v. Steven Yulek Dec t/d/b/a DecMutant Arms*, Cumberland County Case No. 2023-00297 ("*TWWM v. Dec*"). *See* ECF 16, pp. 11-18, a breach of contract action.  Thus, the two cases involve different parties and claims.

### i.     *The two cases are not parallel and therefore abstention is improper.*

For the extraordinary relief of abstention to be considered, the Motion must establish that the two cases are parallel. *See, Ryan v. Johnson,* 115 F.3d 193, 196 (3d Cir. 1997). If two cases are not parallel, "then the district court lacks the power to abstain." *Id.* The Third Circuit has dealt extensively with the concept of parallel litigation.  Most recently it held, "[i]n the Colorado River abstention context, "cases are parallel when they involve the same parties and claims."" *Vertiv, Inc. v. Wayne Burt PTE, Ltd* No. 22-3305, at p.13 (3d Cir. February 1, 2024)*., citing Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017); *accord, Ryan*, at 196. Further, the Third Circuit has consistently held:

> Cases are not parallel under Colorado River abstention where the 'federal court case ***involves claims that are distinct from those at issue in a state court case,' like*** where parties in 'the two cases employ [ ] ***substantially different 'approaches'*** [which] might 'achieve potentially different results.'" *Trent,* 33 F.3d at 224 (quoting *Complaint of Bankers Tr. Co. v. Chatterjee,* 636 F.2d 37, 41 (3d Cir. 1980) ); *see*

*also Univ. of Md. at Balt. v. Peat Marwick Main & Co.*, 923 F.2d 265, 276 (3d Cir. 1991) (holding that **abstention is inappropriate where there is a "lack of identity of all issues" between lawsuits and "no theoretical obstacle to both actions proceeding independently**").

*Kelly,* at 285. (*emphasis added).*

As explained below, this matter has totally different, parties, claims, and issues from *TWWM v. Dec*. RICO is not an action for breach of contract. As such, nothing is preventing this Court from continuing the current action where it has original jurisdiction. *See, id.* On these bases alone, the cases are not parallel and this Court "lacks the power to abstain." *Ryan,* at 196.

The Motion relies solely on *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,* 571 F.3d 299 (3d Cir. 2009), which denied abstention and  defines a parallel case as one with substantially identical claims [and] nearly identical allegations and issues." *ECF 16, p.12,* Even using that standard , abstention is unwarranted here, because the claims, allegations, and issues in this case are not substantially identical to the state action..

Unfortunately, the Defendant's understanding of these facts and how they relate to *TWWM v. Dec* is confused, which leads to the wrong conclusion. The only facts the cases have in common are that they both include international contracts for similar types of products (guns and ammo) and companies of which Dec and McLean are members/shareholders.

The *TWWM v. Dec* suit involves multiple international ammunition/weapons contracts that, between TWWM's claims and Dec's counterclaims, were allegedly breached. *See ECF 16, Ex. 1-2, throughout.* Four contracts were between TWWM and/or Dec and a Czech company ("Zeleny Sport"), in which Dec served as an overseas agent for TWWM, and two contracts were between TWWM and/or Dec and a Romanian company ("Romtehnica"), again where Dec served as an overseas agent for TWWM. *Id.* Neither McLean nor Appolyon are parties to the contracts under the *TWWM v. Dec* suit.

In this suit, however, we have [a] completely different:

1. Type of action - (derivative);
2. Parties - (Dec, a nominal plaintiff on behalf of Appolyon, the company who seeks to benefit from the derivative suit, and McLean);
3. Contract - (a Bulgarian Company, Palmetto State Armory, and Appolyon); and
4. Causes of action - RICO and the acts related to the RICO acts that affected Appolyon, not Dec: conversion [Bulgarian contract], Breach of Fiduciary Duty to Appolyon, Promissory Estoppel [Bulgarian contract], and money had and received [Bulgarian contract]).

After the predicate acts (such as wire fraud) were discovered, this case was filed to redress a different injury from what is being litigated in state court. Nor could Dec have asserted the relief being sought here in his state court counterclaim because the claim belongs to Appolyon, not him. TWWM is not a party to this case.[1] This was made clear in the FAC. *See, ECF 10, ¶¶ 7-8.* As detailed under the heading

---

[1] TWWM is a RICO enterprise, whereas McLean is the defendant in the RICO claim.

"McLean's Scheme to Steal Appolyon's $3.6 Million" it was Defendant's fraudulent actions, as a shareholder, that created Appolyon's loss that this suit was brought to address. *Id. ¶¶ 17-21.*

In a ploy to obscure the issues, Defendant makes the argument that because Defendant and Dec, had other business deals, then *automatically* this RICO suit and the *TWWM* suit are "inextricably intertwined." *ECF 16, p.15.* As shown above, here we have diverse lawsuits, different parties, different causes of action, and a different related contract. As a result, this suit is so different that Defendant cannot allege this RICO suit "is an extension of [Dec's] counterclaim" for breach of totally different contracts with entirely separate facts. *See Id. p. 15.* In other words, these two cases, with different parties, operative and relevant facts, and counts are not parallel under the cited abstention exception outlined in *Nationwide* and *Colorado River*. This Court must consider whether under the federal RICO statute Defendant engaged in predicate acts including multiple acts of wire fraud as stated in the FAC.

### ii.    If the two cases are considered parallel, the Nationwide  factors favor Plaintiff and abstention is still improper.

However, if the Court believes the cases are parallel, it must still consider the six *Nationwide* factors, which are:

> (1) [in an in rem case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was

obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Nationwide,* at 308; *ECF 16, p.12.*

Out of the six factors to consider, the Motion concedes three, admitting factor one is irrelevant, that this Court is a convenient forum (factor two),[2] and there is no issue with piecemeal litigation (factor three). The Motion instead argues factors 4-6, (under subheadings a-c) stating:

(a) the state court obtained jurisdiction over a year before this court;

(b) State substantive law largely controls disposition of the FAC; and

(c) Dec's rights and interest are adequately protected in the TWWM suit.

*See ECF 16, pp.15-18.*

To support his claim that factor four, (that the state court had jurisdiction first), the Motion cites to *TWWM v. Dec*, the progress in that suit, and the state court's jurisdiction over that suit, but the Motion does not even attempt to explain how it relates to this federal and derivative RICO action between two completely different parties. *See ECF 16, pp. 16-17*. Consequently, Defendant's argument that the state court first had jurisdiction under any claim brought in this suit is simply false, and *Nationwide's* fourth factor weighs only in Plaintiff's favor.

---

[2] While Defendant agrees this forum is convenient, Plaintiff must reiterate that Plaintiff's RICO claim creates federal question jurisdiction.  This federal forum is, in fact, the most convenient forum to adjudicate the claims between Appolyon and McLean.

To address the fifth factor (whether state or federal law controls), Defendant must accept that there is federal question jurisdiction over the main (RICO) claim and that Plaintiff is allowed to "assert[] state law claims on behalf of Appolyon to redress the same injury" via supplemental jurisdiction. *See ECF 10, ¶¶ 10, 14.* Plaintiff's state claims rely on the same facts that will prove the federal RICO claim. Defendant, therefore, cannot reasonably argue that state substantive law controls the disposition of this lawsuit.

Finally, the Motion's attempt to address the sixth *Nationwide factor* best reveals the Defendant's confusion as to the facts of this case. See *ECF 16, pp. 17-18.* Indeed, Dec's rights and interests are protected by *TWWM v. Dec* with respect to the Zeleny and Romtehnica contracts.[3] However, Appolyon's interests regarding the Bulgarian contract and the theft of the $3.6M are not.

In sum, ALL *Nationwide* factors weigh heavily in Plaintiff's favor. Defendant argued only three of the six factors (factors 4-6), and as discussed, (4) no court established jurisdiction over any claim or party in this suit until the filing of ECF 1; (5) Plaintiff's federal claim relies on the same facts as the state claims in this suit; and (6) Appolyon's rights and interests are not protected by the state *TWWM v. Dec* suit. Defendant can point to <u>no</u> factor that weighs in his favor.

---

[3] Dec is fully aware he was able to bring any and all claims which related to the TWWM suit contracts against McLean if any existed. *See,* ECF 16, p.18. McLean's assertion that Dec could have brought the same claims in state court on behalf of Appolyon pursuant to Pa.R.C.P. 2251 further confirm's McLean's befuddlement regarding the cases.

### *iii.* **Conclusion – Abstention**

Pointedly, the Motion has shown <u>no reason</u> for abstention under *Colorado River*. *TWWM v. Dec* and *Appolyon v. McLean* are not in any way parallel. Even if the cases were somehow considered parallel, abstention is still inappropriate under the *Nationwide* because all six factors for consideration are weighed in Plaintiff's favor. Accordingly, the Court "lacks the power to abstain[,]" as "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, (1996); *Ryan* at 196.

## B. **Plaintiff Has Standing To Bring The Derivative Action And Has Pled a Cognizable RICO Claim.**

### *i.* **Dec has complied with 15 Pa.C.S. § 1781 et seq.**

Defendant argues that Plaintiff has failed to state claim because Dec lacks standing to bring the derivative action on behalf of Appolyon due to non-compliance with Pennsylvania's statute on derivative actions, *15 Pa.C.S. § 1781. See, ECF 16, pp. 18-21.* To the contrary, Dec, who it is not disputed, has a right to bring a derivative action to enforce the rights of Appolyon, has fully complied with the statute's demand requirement, specifically under *15 Pa.C.S. § 1781(a)(2)* demand exception used when no pre-complaint demand is sent.

First, McLean alleges that Dec did not comply with Pennsylvania's statute on derivative suits because the post-suit demand was allegedly not made "promptly

upon commencement of the action" "on the corporation or the board of directors" as required by 15 Pa.C.S. § 1781(a),(b)(2). *See, ECF 16, pp.18-21*. This is untrue. Dec properly sent the post-complaint demand, a copy of which is attached as "Exhibit A". This letter was noticeably absent from Defendant's motion and brief, as it proves compliance with the statute.

To address the first sub-issue of whether the demand was set to the board of directors or the corporation, Dec sent the post-complaint demand to Mr. McLean via his attorney as soon as McLean's attorney entered an appearance, merely days after filing the complaint. The letter was indeed sent to the "corporation or the board of directors" because McLean and Dec are the only shareholders in Appolyon. Appolyon has no employees, and no formal board of directors was established. Therefore, Dec's post-complaint demand satisfies the statute because it was sent to Mr. McLean, the only other shareholder.

Second, Defendant also argues the post-complaint demand was not promptly sent upon commencement of the action. *See, 15 Pa.C.S. § 1781(b)(2).* Dec sent the letter on February 1, 2024, as soon as he learned of Defendant's counsel's appearance, just days after filing the complaint on January 17, 2024.[4] Since 2021

---

[4] There is no set definition of "prompt" as it relates to the statute, but federal jurisprudence suggests promptness may be measured in months, not days. In *Julabo U.S., Inc. v. Juchheim,* No. 5:19-cv-01412-JDW, at *8 (E.D. Pa. December 9, 2020), the Court had to decide whether **eleven months** was too long to satisfy the Pennsylvania statute's promptness requirement, and the Court held that was indeed too long.  Here, however, we have **fifteen days** from the date of filing.

McLean was consistently evasive and nonresponsive about Appolyon matters (likely because he knew he stole money) which prompted Dec to use the demand exception to 15 Pa.C.S. § 1781. As soon as McLean's counsel entered his appearance, Dec sent the post-complaint demand letter. The demand was sent as prompt as possible and 15 Pa.C.S. § 1781(b)(2) has been satisfied.[5]

Finally, Plaintiff has sufficiently pled irreparable harm in the Complaint and in the post-complaint demand letter, satisfying Pennsylvania's statute on derivative actions. *See, e.g., Exhibit A, ECF 10 ¶ 4-5, Footnote 2.* In the Complaint, Plaintiff states "Appolyon [is] facing irreparable harm in the form of financial destruction, ***reputational disrepair***, unknown tax liability [footnote omitted], and ***bankruptcy***." *ECF 10 ¶ 5.* (Emphasis Added). The demand letter states, among other things, "McLean's theft of $3.6M has and continues to inflict immediate and irreparable harm on the business, and the business now faces ***bankruptcy***." *See, Exhibit A.* (Emphasis Added).

### ii.    *Irreparable Harm: Reputational Damage*

In both the Complaint and demand letter, Plaintiff explicitly cited its reputational damage. Reputational damage to a corporation constitutes irreparable harm. See, *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir.1992)

---

[5] Plaintiff has clearly complied with the statute here. However, even when NO evidence of a post-demand letter is provided, federal courts have let those cases proceed to summary judgment. *See, cf., Envtl. Constr. Servs. v. Menta,* Civil Action 19-3477, at *5 (E.D. Pa. April 22, 2022).

(holding that "grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."). *See also, Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990).* Here, Appolyon could not make any more contracts following McLean's theft of the $3.6M.  The insolvency and reputational damage McLean created make it impossible for any company in the legal arms trading industry to work with Appolyon. Consequently, Appolyon would remain without any goodwill or control of its reputation.  This alone is a specific showing of irreparable harm. *See, Id.*

### iii.    *Irreparable Harm: Bankruptcy*

Monetary losses "can rise to the level of irreparable harm only where they would "force[] [the business] to shut down." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989), *citing Golden Fortune Import & Exp. Corp. v. Mei-Xin Ltd.*, No. 22-1710, at 15 (3d Cir. August 5, 2022). This is precisely Appolyon's situation under the FAC and post-complaint demand letter. *See, ECF 10 ¶ 5, Footnote 2.* Unlike in *Golden Fortune Import* where irreparable harm was not shown due to no risk of bankruptcy, without the requested relief, Appolyon will be forced into bankruptcy[6] for the following reasons:

---

[6] "Forced into bankruptcy" was the language used in *Instant Air Freight Co.* and *Golden Fortune Import* that would mean "irreparable harm."

1. Through McLean's stealing of $3.6M, Appolyon has suffered losses upward of $2,000,000 in operating cashflow, forcing Dec to mitigate damages personally because Appolyon is insolvent. As such, without redress of the theft, Appolyon's only other option is to file for bankruptcy.

2. Although taxes have been federally filed, the stolen money will create unknown tax liability that Appolyon cannot pay. *See, ECF 10 ¶ 5.* State filings are currently pending, and, likely, audits of the company will soon result. McLean's actions in delayed filing times is causing Appolyon to incur substantial fees that will likely alter the corporate tax structure. In sum, Appolyon has an unknown tax liability it will be unable to pay.

Without that money, Appolyon will have to file for bankruptcy. See, *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989), *citing Golden Fortune Import & Exp. Corp. v. Mei-Xin Ltd.*, No. 22-1710, at 15 (3d Cir. August 5, 2022). Appolyon's reputation and goodwill are ruined because of McLean's theft of the $3.6M; it can make no further money due to the same and the missing money. *See, e.g. S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir.1992). Plaintiff has shown irreparable harm and satisfied *15 Pa.C.S. § 1781(b)(1).*

**C. Dec has successfully pleaded a colorable RICO claim.**

*i.*   *The RICO Claim States a Cause of Action Including a Pattern of Racketeering*

At the outset, it should be clear from the FAC that this, contrary to what the Motion states, is not "an ordinary business dispute." *See, ECF 16, p. 22.* A business owner does not ordinarily steal millions of dollars from his business and numerous customers. Such conduct constitutes a pattern of criminal activity, which RICO is intended to combat. *See, e.g., Menzies v. Seyfarth Shaw L.L.P.,* 197 F. Supp. 3d 1076, 1098 (N.D. Ill. 2016)("To the degree 'garden-variety' fraud in the marketplace otherwise meets the well-settled elements of a RICO claim, Congress intended the RICO statute to address such fraud and 'weed' it out of the garden"); *accord, Rotella v. Wood,* 528 U.S. 549, 557 (2000)("The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, 'private attorneys general' dedicated to eliminating racketeering activity").

The elements of a RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Russo v. Lamancusa,* 2024 WL 1433637 at *3 (3d Cir. 2024). The Motion asserts that the FAC fails to allege a pattern of racketeering activity.[7] *ECF 16, p. 23.* In support of that assertion the Motion states

---

[7] "Pattern of racketeering activity" is defined in the statute as "at least two acts… within ten years." 18 U.S.C. 1961(5).

"Dec does not allege when this supposed theft [of the $3.6 million stolen from Appolyon] happened… Dec offers no facts, let alone those necessary to satisfy Rule 9(b)'s heightened pleading standard, to explain why McLean wir[ing] that money to Romania meant that McLean stole it." *Id.* The Motion fails to cite any authority in support of its argument that the allegation of theft in the FAC does not adequately state a RICO violation, that Rule 9(b) applies to this allegation or that the FAC fails to allege a pattern of racketeering. Indeed, all of these assertions are wrong, as detailed below.

First, "To establish a pattern, a plaintiff must show that the racketeering predicates [RICO violations] are related, *and* that they amount to or pose a threat of continued activity." *Russo,* 2024 WL 1433637 at *3. As for relatedness, the Third Circuit has just held the requirement is satisfied as long as the RICO predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 4, quoting *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240 (1989). But the test is "broad" and only requires "*sameness or similarity* of any factor." Id. at 5. So the fact that McLean committed all of the predicate acts demonstrates consistency in "participants" and thus establishes relatedness. (And the "methods of commission" are also consistent. McLean uses

fraud and theft to commit each violation.)  Thus, the FAC alleges a related series of predicate acts.

The second part of the pattern requirement, that the predicate acts "amount to or pose a threat of continued activity, is also easily met.  The Supreme Court established two types of patterns, "closed" and "open."  "Continuity is both a closed-and-open ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.,* 492 U.S. at 241.  The FAC alleges a "closed" pattern.  The first violation occurred in September 2016.  *ECF 10 at* ¶2 3.  The last one, injuring Appolyon, occurred in October 2021 amounting to a five-year period of racketeering.  *Id. at ¶ 17.*  The Third Circuit has held predicate acts occurring over a fourteen-month period are sufficient to meet the duration requirement to plead a closed pattern.  *Swistock v. Jones,* 884 F.2d 755, 759 (3d Cir. 1989); *see also, Tabas v. Tabas,* 47 F.3d 1280, 1294 (3d Cir. 1995)(three years sufficient for a "closed" pattern).  Accordingly, the duration of the predicate acts are long enough for a pattern, there are five victims of the racketeering, and with the relationship requirement satisfied, the FAC alleges a pattern of racketeering activity.  No contrary authority is even cited.

### ii.   *The Motion's Other Criticisms of the RICO Claim Are Wrong*

As to the specific criticisms made, the contention that the FAC does not allege "when this supposed theft happened…"  is simply wrong.  ECF 16, p. 16. The FAC

alleges the underlying transaction and McLean's theft occurred in October 2021. *ECF 10 at ¶17.*  The Motion incorrectly contends, again without authority, that Fed. R. Civ. P. 9(b) applies to pleading this predicate act.  *ECF 10, p. 23.*  The Rule only applies to allegations of fraud.  *See Rose v. Bartle,* 871 F.2d 331, 362 n.53 (3d Cir. 1989).  McLean's theft of $3.6 million from Appolyon did not involve fraud.  The first paragraph of the relevant criminal statute, 18 U.S.C. §2314, prohibits the "transmi[ssion] of "stolen" money.  It does not reference "fraud."  Thus, pleading this offense is subject to the ordinary pleading standard, Fed. R. Civ. P. 8(a).  And the Motion fails to cite any authority for its assertion that the FAC must "offer facts… to explain why McLean wir[ing] that money to Romania meant that McLean stole it."  *ECF 16, p. 18* (internal quotations omitted).  McLean apparently disputes the money was stolen.  But Plaintiff specifically alleges McLean "stole" the money.  *ECF 10 ¶18.*  Fed. R. Civ. P. 9(b) provides that "Malice, intent knowledge, and other conditions of a person's mind may be alleged generally."  Thus, the allegation that McLean intended to steal the money must be accepted as true in deciding this Motion.

The Motion next contends the FAC "conflates McLean with TWWM, as if they are the same."  *ECF 16,  p.19.*  But the FAC is clear that McLean, the RICO "person," committed all of the racketeering acts pleaded in ¶¶17-21, 22-25, 27-28, 29-30, and

31-32.  TWWM is clearly alleged to be the RICO enterprise in these schemes, not the perpetrator. This assertion is simply wrong.

Accordingly, the Motion has not met its burden of demonstrating the Plaintiff fails to state a RICO claim.  It should be denied.

### D. TWWM is Not an Indispensable Party.

#### i.        *TWWM is not an indispensable party under rule 19(a).*

Here, TWWM benefited from McLean's theft of $3.6M, first when McLean paid off a TWWM lawsuit in Texas for $505,000. McLean stole the remaining $3.1M to satisfy TWWM contracts and then filed suit to further his own interests.[8] In short, McLean, acted as an individual to steal the $3.6M.; McLean used TWWM and a state lawsuit to try to legitimize this theft. Defendant's attempts to obscure this fact is an ineffective attempt to get McLean out of the current suit. That said, TWWM did not steal the money, rather its Member, McLean did, and any benefit TWWM received results from the theft. As such, TWWM has no liability here and is therefore not a necessary nor an indispensable party.

#### ii.       *TWWM is not an indispensable party under rule 19(b).*

TWWM is alleged to be the RICO enterprise in Count I of the FAC.  *See, ECF 10, ¶ 36.*  As such, it does not commit the racketeering activity and is not a party to

---

[8] The same also constitutes "irreparable harm" alone because it is not likely Appolyon will ever get that money back but-for success in the current litigation.

a RICO cause of action. *See, e.g., Schofield v. First Commodity Corp. of Boston,* 793 F. 2d 28, 30 (1st Cir. 1986) ("The legislative history surrounding RICO adds to our conviction that §1962(c) does not extend liability to the enterprise").

In an attempt to prove TWWM is indispensable, Defendant again refers to the *TWWM v. Dec* state court case as "an adequate remedy in another forum." *See ECF 16, p.30.* As explained above, joining the current parties to the *TWWM v. Dec* suit would be improper. Defendant is simply confused as to the facts and parties of the cases, but also RICO.

## PRAYER FOR RELIEF

Wherefore, Yulek Steven Dec, derivatively on behalf of Appolyon, Inc. respectfully requests Defendant's motion to dismiss (ECF 12) be DENIED in its entirety.

**The Skeen Firm, PLLC**

Dated:_____April 11, 2024_____          By: /s/ Brian P. McLaughlin_____
                                          Brian P. McLaughlin
                                          PA I.D. No. 331695
                                          brian@theskeenfirm.com
                                          Brocton G. Skeen
                                          PA I.D. No. 325164
                                          (*Pro Hac Vice*)
                                          bskeen@theskeenfirm.com
                                          6 S. Main Street, Suite 210
                                          Washington, PA 15301

                                          **Foster, PC**

                                          Howard W. Foster
                                          IL ID. No.6201218
                                          (*Pro Hac Vice*)
                                          hfoster@fosterpc.com
                                          150 N. Wacker Dr., Suite 4250
                                          Chicago, IL 60606

## WORD COUNT CERTIFICATE

In accordance with L.R. 7.8, the undersigned certifies the foregoing Brief contains 4,756 words as calculated Microsoft Word.

Dated:    April 11, 2024              By: /s/ Brian P. McLaughlin
                                          Brian P. McLaughlin

## CERTIFICATE OF SERVICE

The undersigned certifies the foregoing Brief was caused to be served to the following counsel of record via ECF:

Cory S. Winter
Winter Law Firm, LLC
12 Manor Drive, Suite 202
Mechanicsburg, PA 17055
*Counsel or Defendant*

Dated:    April 11, 2024              By: /s/ Brian P. McLaughlin
                                          Brian P. McLaughlin