IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **YULEK STEVEN DEC, derivatively on behalf of APPOLYON, INC.,** | : | CIVIL ACTION NO. 1:24-CV-83 |
| | : | |
| | : | (Judge Conner) |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **DONALD MCLEAN,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Plaintiff Yulek Steven Dec, derivatively on behalf of Appolyon, Inc., brings this case against Appolyon's co-owner, defendant Donald McLean, for violations of the civil Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq*, and related state-law claims. McLean moves to dismiss Dec's amended complaint for lack of subject-matter jurisdiction, for failure to state a claim, and for failure to join an indispensable party pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), respectively. We will deny McLean's motion.

**I.     Factual Background & Procedural History**

This case arises out of Dec and McLean's co-ownership of Appolyon, a Pennsylvania corporation that purchases and sells munitions across the United States and internationally. (*See* Doc. 1 ¶¶ 1, 2, 12, 17). McLean also is the sole owner of TWWM LLC, a company that conducts the same type of business as Appolyon. (*See id.* ¶¶ 7, 17). There is currently a pending state court action between TWWM and Dec. *See* TWWM, LLC v. Yulek Steven Dec, t/d/b/a

Decmutant Arms, No. 2023-297 (Pa. Cmwlth. Ct. 2023); (see also Doc. 16-1). That case was initiated on January 13, 2023, and includes five claims against Dec relating to contracts for munitions between TWWM, Dec, the Czech Company Zeleny Sport, and the Romanian Company Romenthica in 2020 and 2021. (See Doc. 16-1). TWWM seeks $1,819,800 in direct damages and $1,426,900 in lost profits relating to the Zeleny Sport contracts, $2,623,835.68 in direct damages and $7,438,163.16 in lost profits relating to the Romenthica contracts, as well as $772,395 for Dec's alleged conversion of certain firearm accessory kits. (See id. (Counts I-V)). Dec has answered the operative complaint and asserts two counterclaims, seeking $244,420 from TWWM for its alleged breaches of the contracts or, in the alternative, on promissory estoppel grounds. (See Doc. 16-2).

In the matter *sub judice*, Dec avers that, in October 2021, McLean engaged in a fraudulent scheme to steal $3.6 million from Appolyon. (See Doc. 10 ¶¶ 17-21). McLean purportedly informed one of Appolyon's customers, Palmetto State Armory ("PSA"), that TWWM could acquire certain munitions from Bulgaria if PSA wired Appolyon $3.6 million. (See id. ¶ 17). Dec claims that, after PSA sent the money, McLean purloined the funds by wiring $505,000 to TWWM and diverting the remainder to Romania. (See id. ¶ 17-19).

Dec further avers that McLean has been using TWWM to facilitate his unlawful conduct for over five years. (See id. ¶¶ 7, 22-26; see also id. ¶¶ 36-38). Specifically, he contends that McLean engaged in a scheme to defraud four other companies between 2016 and 2021. (See id. ¶¶ 22-32). In September 2016, McLean purportedly made empty promises to the Texas company Paradigm SRP LLC,

2

stealing $140,000 by falsely representing that TWWM could acquire certain munitions for Paradigm. (See id. ¶¶ 22-25). In October 2020, McLean allegedly lied to another Texas company, Texas Gun Experience, about TWWM's ability to obtain certain munitions. (See id. ¶¶ 27-28). He purportedly stole $500,000 from Texas Gun Experience without fulfilling his promise. (See id.) Dec claims that McLean also used false pretenses to steal $970,000 from a company named IAD2 that same month, which he purportedly wired to the Czech Republic. (See id. ¶¶ 29-30). Lastly, Dec alleges that, in November 2021, McLean used similar tactics to deceive a company named IAD3 into wiring McLean $960,000 to obtain its requested munitions. (See id. ¶ 31). He says that McLean never intended to fulfill this promise and sent the stolen money to Romania instead. (See id. ¶¶ 31-32).

In Dec's view, McLean's pattern of racketeering and, in particular, his abscondence with Appolyon's $3.6 million, destroyed the company financially and reputationally. (See id. ¶¶ 3-6, 33, 39). He specifically alleges that McLean's unlawful actions have exposed Appolyon to potential tax audits and bankruptcy. (See id. ¶¶ 3-6; see also id. ¶ 6 n.2 ("[W]ithout prompt return of its $3.6M, Appolyon will die.")). Dec asserts that McLean's evasive acts prevented him from serving McLean, in his capacity as Appolyon's co-owner, with a pre-complaint demand pursuant to PA. CONS. STAT. § 1781(a). (See id. ¶ 6 n.2). Dec filed a complaint in Appolyon's name against McLean on January 17, 2024. Two weeks later, Dec filed an amended complaint, derivatively on behalf of Appolyon, against McLean for violating RICO (Count I) and four related claims under Pennsylvania law: conversion (Count II), breach of fiduciary duty (Count III), promissory estoppel

3

(Count IV), and money had and received (Count V). Dec thereafter sent a post-complaint demand to McLean. (See id. ¶ 6). McLean has moved to dismiss Dec's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(b)(7). The motion is fully briefed and ripe for disposition.

## II.     Legal Standard

### A.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction. See Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). In either instance, it is the plaintiff's burden to establish jurisdiction. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

When assessing a facial attack, the court applies the same standard of review as when assessing a motion to dismiss under Rule 12(b)(6). See Const. Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) (citing *In re* Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)). Courts reviewing facial challenges "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to

4

the plaintiff." See Gould Elec. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891; Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

**B.    Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual

allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### C. Rule 12(b)(7)

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of a complaint for "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). Rule 19 promulgates the circumstances in which the joinder of an absent party is necessary and, if such joinder is not feasible, the considerations for assessing whether the absent party is indispensable to the action. See FED. R. CIV. P. 19; see also Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 107 (1968); Shetter v. Amerada Hess Corp., 14 F.3d 934, 937-38 (3d Cir. 1994). The moving party bears the burden of showing that the absent party is a required party and thus dismissal is proper under Rule 12(b)(7). See Disabled in Action v. Se. Pa. Transp. Auth., 635 F.3d 87, 97 (3d Cir. 2011). Similar to the other bases for dismissal, the court must accept the truth of the allegations in the complaint and view them in the light most favorable to the non-moving party. See Polygon U.S. Corp. v. Diversified Info. Technologies, 3:12-CV-0923, 2012 WL 5379168, at *4 (M.D. Pa. Oct. 31, 2012) (citing Cummings v. Allstate Ins. Co., No. 11-2691, 2011 WL 6779321, at *3 (E.D. Pa. Dec.27, 2011)). Under Rule 12(b)(7), however, the court may also consider relevant evidence outside the pleadings. See id.

### III. Discussion

McLean raises four challenges to Dec's amended complaint. First, he argues that the pending case in Pennsylvania state court deprives this court of subject matter jurisdiction. (See Doc. 16 at 6-13 (citing, *inter alia*, Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976))). Second, he contends Dec lacks standing because he failed to serve a pre- or post-complaint demand on Appolyon or its board of directors as required by Pennsylvania law. (See id. at 14-16). Third, he claims that the amended complaint fails to state a RICO claim because it does not plausibly allege a pattern of racketeering activity. (See id. at 16-19; see also id. at 19-20 (requesting that the court decline to exercise supplemental jurisdiction over Dec's state-law claims after dismissing the RICO claim). And fourth, he asserts that the case must be dismissed because Dec failed to join TWWM, an indispensable party under Federal Rule of Civil Procedure 19. (See id. at 20-26).

Dec responds that (1) the cases are not parallel, making abstention improper, (see Doc. 20 at 2-10); (2) he was excused from sending a pre-complaint demand but promptly sent a post-complaint demand pursuant to 15 PA. CONS. STAT. § 1781, (see id. at 10-14); (3) the amended complaint plausibly alleges a related series of RICO predicate acts against McLean, (see id. at 15-18); and (4) TWWM is not a necessary or indispensable party, (see id. at 19-20). We will address McLean's claims *seriatim*.

#### A. *Colorado River* Abstention

McLean argues that the court should abstain from exercising jurisdiction pursuant to the abstention doctrine announced by the Supreme Court in Colorado

7

River Water Conservation District v. United States, 424 U.S. 800 (1976).  (See Doc. 16 at 6-7).  The Colorado River doctrine permits courts to abstain from exercising jurisdiction by staying or dismissing a pending federal action in favor of an extant, parallel state court proceeding.  See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009).  The court must apply the doctrine cautiously, mindful that abstention is an "extraordinary and narrow exception" to its "virtually unflagging obligation" to exercise jurisdiction when conferred by Congress.  See id. (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)).  The abstention analysis comprises a two-part inquiry: the court must decide first whether the actions are indeed "parallel" and, second, whether the matters present the "extraordinary circumstances" contemplated by Colorado River and its progeny.  See Nationwide, 571 F.3d at 307 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23-27 (1983); Colorado River, 424 U.S. at 818-19).

Generally, proceedings are "parallel" when they involve "substantially similar parties and claims at the time the federal court is deciding whether to abstain."  See Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 285 (3d Cir. 2017); Nationwide, 571 F.3d at 307.  The state and federal litigation must be "truly duplicative"—that is, "identical, or at least effectively the same."  See Kelly, 868 F.3d at 285 (citation omitted).  If parallelism exists, the court weighs six factors to determine whether the circumstances are sufficiently extraordinary to warrant abstention: (1) in an *in rem* case, which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding

piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) whether federal law or state law controls the decision; and (6) whether the state court will adequately protect the interests of the parties. See Colorado River, 424 U.S. at 818-19; Moses H. Cone, 460 U.S. at 23-27.  The court must evaluate the factors through the prism of the Supreme Court's directive that the balance should be "heavily weighted in favor of the exercise of jurisdiction."  See Moses H. Cone, 460 U.S. at 16.

We begin and end our inquiry with the first prong.  In this federal litigation, Dec brings a RICO claim and four state-law claims against McLean derivatively on behalf of Appolyon.  (See Doc. 10 (Counts I-V)).  He claims that McLean caused PSA to wire Appolyon $3.6 million in October 2021 under false pretenses.  (See id. ¶¶ 17-18).  He further alleges that McLean stole that money by wiring some of it to TWWM and diverting the remainder to Romania.  (See id. ¶¶ 18-19).  McLean purportedly engaged in similar acts of fraud between 2016 and 2021 by lying to four other companies: Paradigm, Texas Gun Experience, IAD2, and IAD3.  (See id. ¶¶ 22-32).  Dec contends that McLean stole $140,000, $500,000, $970,000, and $960,000 from each of these companies, respectively, by misleading them about his acquisition of certain munitions through TWWM.  (See id.)  As to remedies, Dec seeks, *inter alia*, $10.8 million for McLean's alleged RICO violation and $3.6 million on each state-law claim.  (See id. (Counts I-V)).

The pending state action, by contrast, is between TWWM and Dec, temporarily doing business as Decmutant Arms.  (See Doc. 16-1).  Appolyon is not mentioned in the amended complaint or in Dec's responsive pleading.  (See

9

Docs. 16-1, 16-2). Neither is Paradigm, Texas Gun Experience, IAD2, or IAD3. (See Docs. 16-1, 16-2). And neither party raises a RICO claim nor references the $3.6 million at issue in this case. Instead, the state pleadings involve the parties' conduct with respect to their contracts with two companies not mentioned in the federal action: Zeleny Sport and Romenthica. (See Doc. 16-1 (Counts I-V)). The only overlapping third-party, PSA, is referenced in unrelated circumstances nearly a year earlier. (Compare Doc. 16-1 ¶¶ 44-81 (alleging PSA issued a purchase order to TWWM in December 2021, but that TWWM never fulfilled and PSA never paid the order because of Dec's failure to deliver certain munitions from Romania), with Doc. 10 ¶¶ 17-21 (alleging McLean lied to PSA in October 2021 about acquiring munitions from Bulgaria and then "stole PSA's $3.6 million from Appolyon")).

As to remedies in the state lawsuit, McLean seeks direct damages and lost profits in Counts I and III, and compensatory damages in Counts II, IV, and V. (See id.) None of these amounts correlate with the damages at issue in the federal litigation. Though both cases involve Dec and McLean in some capacity, the claims, allegations, legal issues, and monetary damages sought in each lawsuit are wholly distinct. We find that abstention under the Colorado River abstention doctrine is not warranted because the lawsuits are not parallel. See Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997) (observing that when pending cases are not parallel, "the district court lacks the power to abstain.").

### B. Dec's Standing to Sue Derivatively

McLean next contends that Dec lacks standing to bring this lawsuit on behalf of Appolyon. (See Doc. 16 at 14). Pennsylvania law requires a derivative plaintiff to

10

make a pre-complaint demand on the corporation or its board of directors unless he can show "immediate and irreparable harm to the business corporation." See 15 PA. CONS. STAT. § 1781(a) & (b)(1); accord Julabo USA, Inc. v. Juchheim, No. 5:19-CV-1412, 2020 WL 7240378, at *3 (E.D. Pa. Dec. 9, 2020) (emphasizing that plaintiff must allege "the harm will be irreparable"). Our court of appeals has held that irreparable harm to a corporation includes "loss of control of reputation, loss of trade, and loss of goodwill." See S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3d Cir. 1992) (citation omitted). Economic losses may also constitute irreparable harm if they risk "forc[ing] [the business] to shut down." See Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd., No. 22-1710, 2022 WL 3536494, at *6 (3d Cir. Aug. 5, 2022) (nonprecedential)[1] (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 802 (3d Cir. 1989)). If a pre-complaint demand is excused under this limited exception, a plaintiff must make a post-complaint demand "promptly upon commencement of the action." See 15 PA. CONS. STAT. § 1781(b)(2).

Dec alleges that McLean's theft of the $3.6 million and his breach of the related contracts already "destroyed" Appolyon "financially and reputationally." (See Doc. 10 ¶ 4). He specifically contends that because of McLean's conduct, the company is facing unknown tax liabilities—with a high likelihood of audits—and will probably be forced into bankruptcy. (See id. ¶ 5 & n.1). At this procedural

---

[1] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. However, we cite these nonprecedential decisions because we have carefully considered each decision and we are persuaded by each panel's *ratio decidendi*.

juncture, we find that Dec's allegations of financial and reputational harm are sufficient for pre-complaint demand excusal. Dec also sent a post-complaint demand to McLean—Appolyon's only other co-owner—on February 1, 2024, two weeks after filing the complaint. (See Doc. 20-1; Doc. 1; see also Doc. 10 ¶¶ 1, 6). Dec purportedly attempted to notify McLean sooner but was unable to locate him because McLean was incommunicado. (See Doc. 10 ¶ 6 n.2; see also Doc. 20 at 11-12). McLean does not suggest he was prejudiced by the two-week delay, and we find that Dec's post-complaint demand adequately satisfies Section 1781(b)(2)'s imprecise requirement that such a demand be sent "promptly." Cf. Ferraro v. Patterson-Erie Corp., 313 A.3d 987, 1003 (Pa. 2024) (service of complaint four weeks after filing was "prompt" under PA. R. CIV. P. 401) (citing Witherspoon v. City of Philadelphia, 768 A.2d 1079, 1080 (Pa. 2001) (OAJC)); Melmark Home v. W.C.A.B. (Rosenberg), 946 A.2d 159, 162 (Pa. Commw. Ct. 2008) (rejecting agency's strict 30-day notice requirement because "customary usage of 'prompt' [in Workers' Compensation Act] does not involve a specific number of days").

### C. RICO Claim

In his penultimate challenge, McLean attacks the sufficiency of the pleadings as to Dec's civil RICO claim. (See Doc. 16 at 16-19). Section 1962(c) of RICO prohibits "any person . . . associated with any enterprise engaged in . . . interstate or foreign commerce, [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To bring a claim under Section 1962(c), a plaintiff must allege: (1) "the existence of an enterprise affecting interstate commerce," (2) "that the

defendant was employed by or associated with the enterprise," (3) "that the defendant participated, either directly or indirectly, in the conduct of the affairs of the enterprise," and (4) that the defendant's participation involved a pattern of at least two criminal acts of racketeering, known as "predicate acts." See Bailey v. Reed, 29 F. App'x. 874, 875 (3d Cir. 2002) (nonprecedential); see also 18 U.S.C. § 1961(1) (listing predicate acts).

McLean only challenges whether Dec has plausibly alleged the fourth element—a pattern of racketeering. (See Doc. 16 at 18). This element requires a plaintiff to allege "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." See Russo v. Lamancusa, No. 23-1820, 2024 WL 1433637, at *3 (3d Cir. Apr. 3, 2024) (nonprecedential) (quoting Tabas v. Tabas, 47 F.3d 1280, 1292 (3d Cir. 1995) (*en banc*)) (emphasis in original). Our court of appeals has noted that the "test for 'relatedness' is broad" and that allegations of a pattern of racketeering typically will survive a motion to dismiss. See id. at *4 (quoting Banks v. Wolk, 918 F.2d 418, 422 (3d Cir. 1990); citing Swistock v. Jones, 884 F.2d 775, 758 (3d Cir. 1989)); see also id. ("Predicate acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'") (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240 (1989)).

Nearly all the H.J. Inc. factors support relatedness here. Dec avers that McLean directly used his limited liability company, TWWM, to transport stolen goods and commit five separate, specific acts of wire fraud over a five-year period.

13

(See Doc. 10 ¶¶ 7, 8, 17-32, 36-38); see also 18 U.S.C. § 1961(1) (listing transportation of stolen goods and wire fraud as predicate acts)). Each act purportedly involved (1) the same purposes—to cheat each company out of money; (2) the same results—each company losing hundreds of thousands or millions of dollars; (3) the same participants—McLean using and controlling TWWM as a RICO enterprise; and (4) the same method of commission—McLean using false promises about munitions to deceive companies into wiring money. (See Doc 10 ¶¶ 22-32, 38); see also Russo, 2024 WL 1433637, at *5 ("H.J. Inc.'s list of relatedness factors is disjunctive, non-exhaustive, and requires only sameness or similarity of any factor.") (emphasis removed). The allegations, taken as true, reasonably amount to a continuing threat of criminal activity. We will deny McLean's motion to dismiss Count I.

### D.  Required Joinder

Lastly, McLean asserts that the amended complaint should be dismissed because Dec failed to join TWWM, an indispensable party. (See Doc. 16 at 20-25). This challenge requires the court to determine: (1) whether the absent party is a necessary party; (2) if so, whether it is feasible to join them to the action; and (3) if the absent party cannot be joined, whether they are indispensable. See Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993). If the absent party cannot be joined and is indispensable, the court must dismiss the action. See Gen. Refractories Co., 500 F.3d at 312 (citation omitted).

Under Federal Rule of Civil Procedure 19, joinder of an absent party is necessary when feasible if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

See FED. R. CIV. P. 19(a)(1); Gen. Refractories Co., 500 F.3d at 312 (citation omitted). If joinder is not feasible, the court must determine whether the absent party is indispensable. See Fed. R. Civ. P. 19(b). This requires the court to consider how a judgment might prejudice the absent or existing parties, if the prejudice can be mitigated, whether a judgment in the party's absence would be adequate, and if the plaintiff would have an adequate remedy following dismissal. See id.

McLean contends that TWWM is a necessary and indispensable party, but that joinder is not feasible. (See Doc. 16 at 22-25). He asserts that joining TWWM is infeasible because it would make this suit even more parallel to the ongoing state litigation, further underscoring why the court should abstain under Colorado River. (See id. at 24). We disagree. TWWM is not a necessary party under Rule 19. Dec's allegations are against McLean, not TWWM. (See Doc. 10 (Counts I-V)). McLean purportedly used TWWM as a RICO enterprise in furtherance of his unlawful conduct—but TWWM faces no liability. See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 268 (3d Cir. 1995) (plaintiff cannot recover against corporate enterprise merely because officer uses it to engage in racketeering) (citation omitted); (see also Doc. 10 ¶ 59 ("McLean is the only party to benefit from these

15

actions, in that he took corporate funds through TWWM"); id. ¶ 65 ("McLean wrongfully diverted $3.6 million from the Appolyon/PSA contract")). Nor will TWWM's absence impede its ability to protect its interests or hinder the court's ability to accord relief among Dec (for Appolyon's benefit) and McLean. As discussed above, the gravamen of this case, including the damages sought, is wholly distinct from the pending state-court action and will not result in inconsistent obligations to the parties. See *supra* pp. 7-10. Because TWWM is not a necessary party to this action, joinder is not required.

### IV. Conclusion

We will deny McLean's motion to dismiss Dec's amended complaint. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:        July 30, 2024